UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MAURICE CLIVE SMITH, :
:
Petitioner, :
: **MEMORANDUM AND ORDER DENYING**
: **HABEAS CORPUS**
:
-against- :
:
DALE ARTUS, : 03 Civ. 9819 (AKH)
Clinton Correctional Facility, :
:
Respondent. :
-------------------------------------------------------x

ALVIN K. HELLERSTEIN, UNITED STATES DISTRICT JUDGE:

   A jury in the Supreme Court of New York, Bronx County, found petitioner, Maurice Clive Smith, guilty of second degree murder, New York Penal Law (NYPL) § 125.25, and criminal possession of a weapon in the second degree, NYPL § 265.03. Smith was sentenced to concurrent prison terms of 25 years to life and 5 to 15 years. Jmt., Sup. Ct., Bronx Cty., July 24, 1996 (Massaro, J.).

   Petitioner filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 22, 2003 alleging five grounds for relief: (1) the trial judge violated his Sixth Amendment right of confrontation by improperly admitting the grand jury testimony of one witness into evidence; (2) the trial judge violated his statutory right to notice under New York Criminal Procedure Law (NYCPL) § 710.30 by failing to exclude an inculpatory statement made to Jamaican authorities where the prosecution failed to give notice of intent to use the statement at trial within 15 days; (3) the trial judge violated his Fourteenth Amendment Due Process rights by giving the jury faulty instructions with respect to the affirmative defense of justification; (4) the trial judge violated his Fifth Amendment right against self-incrimination by admitting a confession given to Jamaican authorities into evidence where the confession preceded Miranda warnings; and (5) appellate counsel violated his Sixth Amendment right to

effective assistance of counsel in various respects. For the various reasons set out below, Petitioner's claims are without merit and his petition is dismissed.

  I.   Background

The Killing

The evidence presented at trial showed the following: On November 19, 1992, Petitioner Smith shot and killed Horace Richards, also known as "Six-Six" or "Sixty," at the corner of 214th Street and Barnes Avenue in the Bronx. T. Tr. 1076–80, 1085–89. Petitioner took the stand at trial and testified that he fired shots at Richards because he believed Richards was reaching for his gun and about to kill him. Tr. 1076–80. After the shooting, Petitioner boarded a flight to Miami under a false name to avoid police detection, and then from Miami to Jamaica. Resp. Ex. 1 at 21.

Apprehension in Jamaica

In December, 1992, Richards' wife, Evadney Boyd, went to Jamaica for his funeral service. On December 23, 1992, Boyd was approached by Petitioner outside her mother's apartment and threatened to kill her. See Tr. 34–35. Later that month Boyd informed Jamaican police officials that Petitioner had killed Richards and was presently in Jamaica. Tr. 35–37, 40, 74–75. On January 13, 1993, Boyd again saw Petitioner and went to the Jamaican police department for help. The police dispatched a detective, Deputy Corporal Patrick Gray, to the area, who arrested Petitioner and brought him to the police station. Resp. Ex. 1 at 15–16; Tr. 39–41, 282–84, 287. The next day, Petitioner, from his cell, expressed an interest to talk to a Detective Inspector, Cornelius Walker, whom he had known for 20 years. See Tr. 298–99; Tr. 289–300. Detective Walker and Superintendent Calvin Benjamin brought Petitioner to the "homicide office." Petitioner indicated that he wanted to discuss a murder. Detective Walker cautioned Petitioner that he had the right to have an attorney or a Justice of the Peace present, and that if he made a statement, the Jamaican authorities would record it in writing and have the right to use it

in a proceeding against him. Tr. 300-01.

Petitioner Smith opted for the presence of a Justice of the Peace, at which point Justice Nembhard was summoned and appeared. Tr. 302–03. Between the hours of 10:30am and 12:00 noon on January 14, 1993, Petitioner made a statement in which he admitted to shooting Horace Richards in the back three times with a semiautomatic pistol. Benjamin: H. Tr. 65; Walker: T. Tr. 314–18 (reading statement into trial record). See also Nembhard: T. Tr. 360–70 (describing how statement was recorded).

Investigation of the New York City Police Department

Detective Charles Longi of the New York Police Department was assigned to investigate the death of Horace Richards on November 19, 1992. H. Tr. 207. In the course of his investigation, he became familiar with Evadney Boyd, the wife of Horace Richards. H. Tr. 207. Detective Longi testified that on January 14, 1993, Boyd called him from Jamaica to notify him that the Jamaican police had apprehended Petitioner Smith. Longi confirmed the apprehension with Detective Benjamin, H. Tr. 213. Cf. Benjamin: H. Tr. 73 (Detective Longi telephoned [Benjamin] on January 15, 1993), and faxed a photograph of Petitioner to the Jamaica police station so that Detective Benjamin could confirm the identity of the suspect. H. Tr. 263. During a second phone call on the same day, Detective Benjamin confirmed receipt of the photo facsimile and confirmed that the individual in custody was the same person depicted in the photograph. H. Tr. 214. Detective Benjamin informed Detective Longi that Smith had made a statement to Jamaican authorities. Detective Longi then reported the facts to Assistant District Attorney Palumbo. H. Tr. 264.

The police report prepared and signed by Detective Longi indicated that his communications with Evadney Boyd and Detective Benjamin had taken place on January 13, 1993, not January 14, 1993. H. Tr. 210–11. Detective Longi testified that the date on the police report was incorrect. H. Tr. 210–31. Detective Longi also recorded in a "DD-5 report" dated January 14, 1993, that he spoke with ADA Palumbo on January 13, 1993, and ADA Campbell on January 14, 1993. H. Tr. 216. At the hearing, Detective Longi testified that he realized he had dated this report incorrectly when he

learned that Petitioner was seized by Jamaican police on January 13, 1993. Detective Longi testified that Boyd informed him that she had placed her call to him the day after Petitioner was apprehended. Because Detective Longi knew that Petitioner was taken into custody on January 13, 1993, he realized that he could not have written the report on January 14, 1993, as he had thought when he dated and signed the document. H. Tr. 216–20. After offering this explanation, Detective Longi amended his testimony as to when he spoke with the ADAs Palumbo and Campbell, stating that he spoke with both of them on the same day, contrary to what was written in the DD-5 report. H. Tr. 229–30.

Indictment, Extradition, and Notice of Petitioner's Statement to Jamaican Authorities

Petitioner was indicted by a grand jury in Bronx County on January 15, 1993.[1] See Johnson Affidavit ¶ 5. Cf. Resp. Brief at 3 (indictment filed on January 25, 1993). On March 26, 1993, Petitioner was extradited from Jamaica to the United States and arrested upon his arrival. See People v. Smith, Indictment No. 441/93 *2 (Jun. 18, 1996) (denying motion to suppress defendant's statement to Jamaican authorities) reprinted in Resp. Ex. 4. See also H. Tr. 5. On March 31, 1993, an assistant district attorney notified defense counsel for Petitioner that a statement had been obtained in Jamaica, but did not describe the "sum and substance" of the statement. H. Tr. 5–6. The parties agreed that defense counsel received a typed copy of the statement on October 27, 1993, but disagreed as to the date that Jamaican authorities transmitted the Petitioner's statement to the United States. Defense counsel maintained that Jamaican authorities sent the statement by facsimile on January 14, 1993. H. Tr. 8–9. Assistant District Attorney Allen Karen, who had been assigned to the Richards murder case in 1993, testified that he was not in possession of Petitioner's statement until October 1993. Karen: H. Tr. 22–23. The State of New York commenced the prosecution of Petitioner Smith in 1996.

---

1 The charges in the January 26, 1993, indictment were: Murder in the Second Degree, Manslaughter in the First Degree, Criminal Use of a Firearm in the First Degree, Criminal Possession of a Weapon in the Second Degree, Criminal Possession of a Weapon in the Third Degree, and Menacing in the Second Degree (Indictment Number 441/93). Resp. Brief at 3.

## II. Judicial Proceedings

Petitioner filed a motion to suppress the statement to Jamaican authorities at trial, on the grounds that the prosecution had failed to comply with New York Criminal Procedure Law (NYCPL) § 710.30. The statute requires the state to serve notice on the defendant of the prosecution's intent to present evidence of a statement made by the defendant to a public servant with 15 days of arraignment. See NYCPL § 710.30. If the prosecution fails to serve such notice, the statement is not admissible, except where the prosecution shows good cause why it could not comply with the statutory deadline. See id. The trial judge conducted a Huntley hearing on May 8, 10, and 15 of 1996, and found that the prosecution had demonstrated good cause for missing the 15 day notice requirement because of the difficulty of communicating with Jamaican authorities. See H. Tr. 26, 360.

Defense counsel further argued that Petitioner's statement to Jamaican police must be suppressed at the pre-trial hearing in May of 1996 on grounds that the confession was obtained in violation of his Fifth Amendment Miranda rights. See Lipman: H. Tr. 280. The trial judge denied Petitioner's motion to suppress on Miranda grounds at the suppression hearing, and the state proceeded to jury selection. See H. Tr. 360.

At trial, the prosecution moved to introduce the grand jury testimony of Roy Davis after Davis failed to respond to the subpoena ordering him to testify at trial. The trial court conducted a Sirois[2] hearing to determine whether to grant the motion. See T. Tr. 736–797, and concluded that the people had proved by clear and convincing evidence that Davis' absece was caused by Petitioner's conduct. The Appellate Division affirmed, holding that Petitioner had caused, not only witness Davis' failure to appear, but had sought to interfere with other witnesses as well.

---

2 Holtzman v. Hellenbrand, 92 A.D.2d 405, 460 N.Y.S.2d 591 (N.Y. App. Div. 2d Dept. 1983) ("[W]henever the People allege specific facts which demonstrate a 'distinct possibility' . . . that a criminal defendant's misconduct has induced a witness' unlawful refusal to testify at trial or has caused the witness' disappearance or demise, the People shall be given the opportunity to prove that misconduct at an evidentiary hearing."). Sirois was one of the defendants in Holtzman v. Hellenbrand, supra.

On June 3, 1996, the jury delivered a verdict of guilty of Murder in the Second Degree, New York Penal Law (NYPL) § 125.25 and Criminal Possession of a Weapon in the Second Degree, NYPL § 265.03. On June 18, 1996, the trial judge issued a written opinion explaining why he had denied Petitioner's motion to suppress the inculpatory statement given to Jamaican police. See Resp. Ex. 4, People v. Smith, No. 441/93 (Jun. 18, 1996). On July 24, 1996, Petitioner was sentenced to concurrent indeterminate terms of imprisonment of 25 years to life and 5 to 15 years. Jmt., Sup. Ct., Bronx Cty., July 24, 1996 (Massaro, J.).

Petitioner appealed his conviction to the New York State Appellate Division, First Department. His assigned counsel raised three issues on appeal: 1) Petitioner's Sixth Amendment confrontation rights were violated by the admission of Ripton Davis's grand jury testimony; 2) Petitioner's statutory right to timely notice of intent to use the inculpatory statement under NYCPL § 710.30 was violated by failure of the trial court to preclude that statement; and 3) Petitioner's Fourteenth Amendment Due Process rights were violated by erroneous jury instructions. See Johnson Aff. ¶ 8; Resp. Ex. 5, Pet'r's Appellate Br. In November, 2000, by leave of the Appellate Division, Petitioner filed a pro se supplemental brief, raising a fourth claim for relief on the ground that his inculpatory statement was taken in violation of his Fifth Amendment Miranda rights. See Resp. Ex 7, Pet'r's Pro Se Supp. Br. The Appellate Division denied all four grounds for relief, stating, inter alia, that the trial court credibly found that Petitioner had attempted to tamper with witnesses, and that Jamaican authorities had not acted as agents of the New York City Police Department. See People v. Smith, 283 A.D.2d 189, 189–90 (May 3, 2001).

Petitioner sought leave to appeal to the New York Court of Appeals in applications dated May 21, June 14, and September 13 of 2001, Johnson Aff. ¶¶ 14, 16, 17. Leave was denied on October 24, 2001. People v. Smith, 97 N.Y.2d 643 (2001).

On February 19, 2002, Petitioner filed for a writ of error coram nobis with the Appellate Division, First Department, alleging ineffective assistance of appellate counsel. Petitioner argued that appellate

counsel failed to argue that petitioner's trial attorney provided him with ineffective assistance of counsel. See Weisel Aff. ¶ 19; Resp. Ex. 12, Pet'r's Coram Nobis Motion.

On May 20, 2003, the Appellate Division, First Department, denied the petition for a writ of error coram nobis. Resp. Ex. 13, Coram Nobis Order. Petitioner then appealed the denial to the New York Court of Appeals on June 10, 2003, Resp. Ex. 14, Pet'r's Coram Nobis Leave Application, which was denied on September 18, 2003. Resp. Ex. 15, Certificate Denying Leave.

On December 22, 2003, petitioner timely filed the instant habeas petition, re-stating the grounds for relief that he raised in his appellate brief and subsequent coram nobis petition.

### III. Discussion

#### A. Standard of Review

The Anti-Terrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA), provides the standard of review for federal habeas corpus petitions. The AEDPA provides that a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits by a state court, unless the adjudication of that claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

#### B. Admission of the Grand Jury Testimony of Ripton Davis at Trial

The right of the defendant "to be confronted with the witnesses against him," U.S. Const., Amend. VI, ordinarily precludes the admission of out-of-court testimonial statements, such as those made to a grand jury, into evidence at trial. See e.g., Snyder v. Massachusetts, 291 U.S. 97, 106 (1934). The defendant waives his right of confrontation, however, when his misconduct causes the witness not to testify. See Cotto v. Herbert, 331 F.3d 217, 234 (2d Cir. 2003) ("[W]itness intimidation is the paradigmatic example of the type of 'misconduct' that can lead to the forfeiture of confrontation rights."). In the State of New York, the prosecution may "allege specific facts that demonstrate a distinct possibility

that the criminal defendant's misconduct has induced a witness's unlawful refusal to testify." Holtzman v. Hellenbrand, 92 A.D.2d 405, 415 (N.Y. App. Div. 1983) (formulating requirements of Sirois hearing). If the trial court finds that the prosecution has presented clear and convincing evidence that the defendant's misconduct caused the witness's unlawful refusal to testify, he will be found to have waived his confrontation rights, and the witness's prior grand jury testimony may be admitted as direct evidence at trial. Id.; see also People v. Geraci, 85 N.Y.2d 359, 369 (1995 (same).

Petitioner Smith alleges that the State of New York violated his Sixth Amendment right of confrontation by admitting the grand jury testimony of one Roy Davis, also known as Ripton Davis. During the Sirois hearing, the prosecution presented evidence, primarily in the form of testimony by Detective Longi, that Petitioner had threatened Davis. See T. Tr. 736–797. Petitioner argues that Davis refused to testify because he was attending a funeral of a family member outside of the United States, not because Petitioner had intimidated Davis in any way. See Pet'r's Mem. of Law in Support of Writ of Habeas Corpus at 14 [hereinafter Pet'r's Mem.].

The question whether Petitioner caused Davis to refrain from testifying pursuant to the subpoena served on him, is a question of fact. See Cotto v. Herbert, 331 F.3d at 232 (evaluating state court's decision to permit witness's grand jury testimony after Sirois hearing). Petitioner argues that the trial court's decision to admit Davis's grand jury testimony "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). This court may evaluate the findings of the trial court according to a level of scrutiny lower than a de novo evaluation. According to that level of scrutiny, the issue is whether the prosecution met the clear and convincing evidence standard that Sirois prescribes for courts of the State of New York, or for that matter, the preponderance of the evidence standard that United States v. Mastrangelo, 693 F.2d 269, 272–73 (2d Cir. 1983) requires in this circuit. In Cotto, supra, the Second Circuit suggested that it might have reached a different determination of fact than the trial court under de novo review, but it did not find sufficient error to call the trial court's determination "unreasonable" under § 2254(d)(2). See 331 F.3d at

233. Therefore it appears to have applied the same standard of review to § 2254(d)(2) as the Second Circuit has traditionally applied to determinations of reasonableness under § 2254(d)(1), namely, "some increment of incorrectness beyond error." Id. at 235 (citing Fuller v. Gorczyk, 273 F.3d 212, 219 (2d Cir. 2001); Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).

The standard of habeas review is further elaborated by § 2254(e)(1), which requires the reviewing court to treat the fact finding of the trial court with a "presumption of correctness." In summary, the fact finding of the trial court may be "overturned on habeas review only if: (1) a petitioner presents clear and convincing evidence that the court erred in its determination or (2) it was based on an unreasonable application of the facts." Francis v. Duncan, 2004 U.S. Dist. LEXIS 16670 (D.N.Y., 2004) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Cotto v. Herbert, 331 F.3d at 233).

Here, the trial court conducted the Sirois hearing as required by New York law and federal Sixth Amendment law and found that Petitioner Smith had caused the absence of Ripton Davis by threats and other forms of intimidation. At the hearing, Detective Longi testified that Davis told him that he (Davis) feared for his life and did not want to appear in court as a witness against Petitioner. Detective Longi testified also that Petitioner had offered Davis money in exchange for not testifying. The court also found that Petitioner had attempted to tamper with other witnesses in the trial and considered this finding circumstantial evidence that he would interfere with Davis as well. Detective Longi testified that Albert Kelly, Michelle Rose, and the mother of Evadney Boyd all received threats from Petitioner. The threats to Kelly were relayed by Marlene Satchell, Kelly's wife, who indicated to Detective Longi in an interview that someone representing himself as a friend of Fat Paul had called her residence eight or nine times warning Kelly not to appear in court. The threats to Michelle Rose were apparently relayed by Lydia Denton, who Petitioner allegedly visited personally. Detective Longi interviewed Rose, but not Denton. Finally, ADA Yaremko testified that Michelle Rose and Albert Kelly had informed her about threats against them made by Petitioner.

Petitioner Smith testified at the Sirois hearing that he did not know Lydia Denton or Marlene Satchell and that he had never tried to contact Michelle Rose. Even if their assertions were true, they do little to dispel the evidence offered by the prosecution. The evidence introduced by the prosecution is entirely hearsay, but as the Second Circuit has recognized, "successful witness intimidation would often not be provable at all if hearsay were not permitted," since the most direct source of evidence of intimidation is the very witness whose intimidation prevents him or her from testifying in the first place. Geraci v. Senkowski, 23 F. Supp. 2d 246, 258 (E.D.N.Y. 1998) (citing United States v. Mastrangelo, 693 F.2d at 273).

Petitioner Smith further contends that, at the Sirois hearing, the trial court improperly considered Mr. Kelly's allegations that defense counsel and Petitioner had intimidated him from testifying at trial, since these allegations were made at an in-camera proceeding from which Petitioner and his counsel were excluded. However, this contention is unfounded. The Supreme Court has held that one has a due process right "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." Snyder v. Massachusetts, 291 U.S. 97, 105-06 (1934). Conversely, if one's absence would not demonstrably affect the outcome of the case, this right does not exist. See Owens v. Portuondo, 1999 WL 378343, 18 (S.D.N.Y., June 9, 1999), aff'd, 205 F.3d 1324 (2nd Cir. 2000 [table]); Stone v. Stinson, 121 F. Supp. 2d 226, 241 (W.D.N.Y. 2000). The effect of a defendant's absence must be analyzed in light of the entire record. See Snyder, 291 U.S. at 115.

In Petitioner Smith's case, Detective Longi, in an open court during the Sirois hearing, testified that Mr. Kelly's common-law wife had received threats. At this point, the court commented "Mr. Kelly shared this with the Court during the Court's own in-camera discussion with him in connection with his having invoked the Fifth Amendment" (T. 928). While Petitioner Smith contends that this statement signaled the court's intent to consider Kelly's in-camera testimony in its Sirois decision (Pet'r appellate Br. at 53), the statement, when viewed in context and understood literally, merely acknowledges

that Kelley testified similarly and does not indicate that the trial judge intended to rely on Kelly's in-camera testimony in making his <u>Sirois</u> decision.

Moreover, the Appellate Division found that "the record fails to support defendant's claim that the court relied on evidence established at a proceeding concerning a witness's initial refusal to testify, from which the defendant and his counsel had been excluded." <u>People v. Smith</u>, 283 A.D.2d 189, 190 (1st Dept. 2001). This was a finding of fact and presumed to be correct. <u>Marshall v. Lonberger</u>, 459 U.S. 422, 431-32 (1983). Since Petitioner Smith has produced no rebuttal evidence, the Appellate Division's finding must stand.

I conclude that the trial court's decision to admit Ripton Davis's grand jury testimony was reasonably based on the evidence – in the phrasing of the statute, it was not "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

C. <u>Compliance with the Notice Requirements of NYCPL § 710.30</u>

A federal court may entertain an application for a writ of habeas corpus only if the petitioner's custody violates the Constitution, laws, or treaties of the United States. <u>See</u> 28 U.S.C. § 2254(a); <u>Rose v. Hodges</u>, 423 U.S. 19, 21 (1975). A federal court does not have the power to correct a misapplication of state law unless that misapplication itself violates federal law. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67–68 (1991); <u>Ponnapula v. Spitzer</u>, 297 F.3d 172, 182 (2d Cir. 2002).

Petitioner Smith's claim that the trial judge should have excluded his inculpatory statement to Jamaican authorities because the prosecution did not give proper notice of the statement pursuant to NYCPL § 710.30 does not present a federal question. <u>See e.g.</u>, <u>Ventura v. Artuz</u>, 2000 U.S. Dist. LEXIS 10167, 2000 WL 995497 (S.D.N.Y. 2000) (violation of NYCPL § 710.30 is "clearly a state law issue and is not cognizable under federal habeas review"). Therefore, I cannot review Petitioner's claim as it relates to alleged violations of NYCPL § 710.30.

D. <u>Instructions to the Jury on the Affirmative Defense of Justification</u>

The instructions to the jury at the conclusion of trial describe the elements of the crime with which the defendant has been charged and tried. If the judge does not properly describe the crime in the jury instructions, the jury might convict the defendant of the erroneously described crime instead of the charged crime. Likewise, if the trial judge fails to instruct the jury as to possible defenses to the crime, the jury might vote to convict without having considered circumstances that would legitimate the defendant's conduct. A violation of the Due Process Clause can result from such errors.

In reviewing an ambiguous or defective jury instruction, the District Court must inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." Estelle v. McGuire, 502 U.S. at 73. The allegedly erroneous instruction "must be considered in the context of the instructions as a whole and the trial record," id., and it must so infect "the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147 (1973).

Petitioner alleges three defects in the jury instructions to support his claim that his Due Process rights were violated: The trial court 1) "omitted any mention of the subjective element of justification," 2) "misconstrued the 'duty to retreat' instruction," and 3) gave defective "excessive force" instructions. Pet'r's Mem. at 41–45.

1. Trial Court's Justification Instructions Were Constitutionally Adequate

In New York, the prosecution must disprove the defense of justification,[3] which authorizes, subject to conditions, "physical force upon another person when and to the extent he or she reasonably believes such to be necessary to defend himself, herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by such other person . . . ." New York Penal Law (NYPL) § 35.15. The justification defense entails a two-step inquiry. "The jury must first determine whether defendant actually believed that deadly physical force was necessary. If the

---

3 "Justification is a defense, not an affirmative defense, and therefore the People bear the burden of disproving it beyond a reasonable doubt." In re Y.K., 87 N.Y.2d 430, 433 (1996).

People fail to meet their burden of proving that defendant did not actually believe that the use of deadly physical force was necessary, then the jury must move to the second step of the inquiry and assess the reasonableness of this belief," People v. Wesley, 76 N.Y.2d 555, 559 (1990) (citations omitted), from the defendant's point of view. The reasonableness inquiry is objective because the jury considers what a reasonable person would do, or perceive, in the circumstances of the defendant. "Evidence of a defendant's circumstances includes relevant knowledge that the defendant may have had about the victim, the physical attributes of all those involved in the incident, and any prior experiences that the defendant may have had which could provide a reasonable basis for a belief that another person's intentions were to injure or rob him or that the use of deadly force was necessary." People v. Wesley, 76 N.Y.2d 555, 559 (1990) (citing People v. Goetz, 68 N.Y.2d 96, 114 (1986)).

The trial court instructed the jury on the first step of the justification defense, stating, "[Y]ou must ask yourselves . . . did Mr. Smith actually believe that it was necessary for him to defend himself against deadly force at the moment this incident took place." C. Tr. 98. With regard to the second step, the trial court gave the following instructions:

> In determining whether the defendant's beliefs were reasonable, you apply a very objective standard; that is, you put yourself in the defendant's shoes, you consider what the defendant's belief was at that time and whether that belief was that of a reasonable man given the circumstances which you find he faced on that occasion then and there . . . place yourself figuratively in his shoes and you decide based upon the circumstances surrounding the encounter as though circumstances then and there, how they appeared to a reasonable man . . . .

C. Tr. 99–100. Defense counsel commented, in relation to the above charge, that the trial judge had introduced the word "objective," but then defined "subjective," which he defined "perfectly." C. Tr. 113. The trial judge concurred in this observation and suggested that defense counsel raise this issue with the committee that drafts jury charges. See C. Tr. 113. Thus while it is true, as Petitioner argues, that the trial judge did not define the word "subjective" for the jury, his charge nevertheless conveyed the subjective and objective factors of the reasonableness determination. The repeated instructions to put "yourself in the defendant's shoes" communicated that the jurors

must consider whether the belief was reasonable from the position of a reasonable person in the same circumstances as the defendant. I hold that the charge was not defective and, in any event, did not infect the trial in such a manner as violates Due Process. see Cupp v. Naughten, 414 U.S. at 147.

    2. Trial Court's Duty to Retreat Instructions Were Constitutionally Adequate

When deadly forced is used, as by Petitioner, the prosecution may disprove the justification defense by showing that the actor failed to retreat, even though he knew he could have done so safely. See In re Y.K., 87 N.Y.2d 430, 433–34 (1996). Thus the prosecution must prove that the defendant had knowledge of the possibility of retreat, and an instruction that fails to communicate the element of knowledge to the jury as part of the duty to retreat is defective. The first statement by the trial judge, if not elaborated, would have been defective because it omits the knowledge requirement. See C. Tr. 100 (defendant not justified in using deadly force "if he could have escaped, gotten away from the situation with complete safety to himself"). The trial judge, however, followed this instruction with another that emphasized the knowledge requirement. See C. Tr. 100 ("It is your duty to determine . . . whether the defendant . . . in fact knew he could have retreated"). The words "in fact" in this instruction draw attention to the knowledge requirement and remedies its omission in the first statement.

In any event, the instruction given by the trial judge did not prejudice petitioner and did not violate any Constitutional right. "The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." Estelle v. McGuire, 502 U.S. at 72 (quotations omitted).

Clearly, it was possible for Petitioner to retreat. Petitioner shot Richards in the back and no weapon was found on Richards's body. A ballistics expert proved that Petitioner first had to remove the safety, cock the gun, and then pull the trigger three times. T. Tr. 1218–22. Taking the instructions and the trial evidence as a whole, therefore, I do not find a "reasonable likelihood that the jury has applied

the challenged instruction in a way that violates the Constitution," Estelle v. McGuire, 502 U.S. at 72, and hold that Petitioner's claim with respect to the trial judge's duty to retreat instruction is without merit.

    3. Trial Court's Excessive Force Instructions Were Constitutionally Adequate

The defendant may use deadly force only where justified, to the extent he reasonably believes it necessary to defend himself. The trial judge instructed the jury that "there is some evidence, however, that you should consider that the victim was found and incapacitated and this defendant continued to use deadly physical force against him." C. Tr. 101. Petitioner's argument that the jury could not know which bullet killed Richards on the basis of the forensics evidence at trial is not relevant, since the excessive force instruction relates to whether Petitioner's life was still in danger, if it ever was, after the first bullet was fired, not which bullet most directly caused the victim's death. In sum, all of Petitioner's claims based on the invalidity of jury instructions given at trial are without merit.

    E.   Admission of Petitioner's Confession to Jamaican Authorities Without Miranda Warnings

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In Miranda v. Arizona, the United States Supreme Court concluded that "without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." 384 U.S. 436, 467 (1966). "In order to combat these pressures and to permit a full opportunity to exercise the privilege against self-incrimination," id., the Miranda Court instituted a set of warnings to be given to suspects taken into custody.

The Jamaican police seized Petitioner Smith and confined him in jail. He gave the confession at issue in this petition in the presence of several police officers, without the benefit of counsel. He was not given the warnings prescribed in Miranda, although he was given several similar "cautions" in accordance with Jamaican law. The exclusionary rule of Miranda, however, does not apply

where the confession was taken by a private party or a foreign government. See United States v. Janis, 428 U.S. 433, 455 (1976); United States v. Yousef, 327 F.3d 56, 145 (2d Cir. 2003) ("[S]tatements taken by foreign police in the absence of Miranda warnings are admissible if voluntary."). There are two exceptions to this rule. First, where the private party or foreign government is acting as an agent of the United States, or the parties pursue the interrogation as a joint venture, the defendant is entitled to Miranda warnings. See United States v. Yousef, 327 F.3d 56, 145 (2d Cir. 2003) ("[S]tatements elicited during overseas interrogation by foreign police in the absence of Miranda warnings must be suppressed whenever United States law enforcement agents actively participate in questioning conducted by foreign authorities.") (emphasis added). Second, the exclusionary rule applies where statements are taken by foreign police under circumstances that shock the judicial conscience. See id. at 146. I consider each exception in turn.

1. New York Police Officers Did Not Actively Participate in the Questioning of Petitioner Conducted by Foreign Authorities

In order for the exclusionary rule of Miranda to apply, New York law enforcement agents, including members of the Police Department and District Attorney's Office, must have actively participated in the questioning of Petitioner conducted by foreign authorities. Id. at 145. Although the Second Circuit has not defined the circumstances under which the relationship between American and foreign authorities might amount to a joint venture, see id. at 146; United States v. Bagaric, 706 F.2d 42, 69 (2d Cir. 1983), it has established some rules to address the issue. For instance, "evidence that the United States may have solicited the assistance of a foreign government in the arrest of a fugitive within its borders is insufficient as a matter of law to constitute United States participation under the joint venture doctrine." Id. (citing United States v. Lira, 515 F.2d 68, 71 (2d Cir. 1975)). This rule is sufficient to decide Petitioner's suppression claim.

As noted above, the trial judge issued an opinion after trial explaining his decision to deny Smith's motion to suppress his confession to Jamaican authorities. See Resp. Ex. 4, People v.

-16-

Smith, No. 441/93 (Jun. 18, 1996) (Massaro, J.) [hereinafter Resp. Ex. 4]. In his decision, the judge found that "Jamaican police first learned about Defendant when alerted by the deceased's wife." He further found "no evidence that New York authorities participated in any meaningful manner . . . ." Id. at 9. The judge declined to find, as a matter of fact, whether Jamaican police took Petitioner's statement before or after contact with New York police, holding instead that it was irrelevant under the circumstances as determined by evidence presented at trial—New York police officers were not present at the scene of the interrogation, and Jamaican authorities were not instructed to interrogate Petitioner. Since American officers were not present at the scene, and the prosecution presented testimony indicating that New York police officers did not authorize or direct the interrogation of Petitioner, New York law enforcement agents did not actively participate in the questioning of Petitioner conducted by foreign authorities. See also Pfeifer v. United States Bureau of Prisons, 615 F.2d 873, 877 (9th Cir., 1980) (no joint venture where American DEA agent was present and armed during interrogation by Mexican authorities because agent did not speak); United States v. Heller, 625 F.2d 594, 600 (5th Cir.-OLD, 1980) (no joint venture where "American agent and the British officers did not exchange information regarding their separate interrogations" of detainee).

2. Petitioner's Confession to Jamaican Authorities Was Voluntary and Was Not Taken Under Circumstances that Shock the Judicial Conscience

All confessions, in order to be admitted at trial, must be voluntary—the product of rational intellect and free will. See Mincey v. Arizona, 437 U.S. 385, 397–98 (1978). The court determines the voluntariness of the statement by examining the totality of the circumstances in which the statement was made. See e.g., Moran v. Burbine, 475 U.S. 412, 421 (1986). The question of whether the statement by a defendant was voluntary is a question of law subject to analysis on habeas review under 28 U.S.C. § 2254(d)(1). The factual determinations that lead to a finding of voluntariness are analyzed under § 2254(d)(2) and § 2254(e)(1), as discussed above.

The trial court found that Petitioner was peaceably apprehended by Jamaican officers; that he raised the possibility of speaking with Detective Walker; that he was cautioned that he did not have to say anything unless he chose to do so; that he was informed that he could ask for the presence of an attorney or a Justice of the Peace during questioning; that he selected a Justice of the Peace; that a Justice of the Peace arrived; and that he signed the cautions as witnessed by the Justice. See Resp. Ex. 4 at 5–7. In sum, the court found that Petitioner "suffered no harm, threat or mistreatment by Jamaican officials" and "his rights under West Indian law were scrupulously honored." The Petitioner does not rebut these findings of fact, as is required to do under § 2254(e)(1), and I find that the trial court's findings of fact were reasonably based on the evidence presented at trial. Finally, the trial court reasonably applied precedent of the United States Supreme Court when it concluded, under the totality of the circumstances, that the Petitioner's confession was voluntary. Petitioner's claim that his Fifth Amendment right against self-incrimination was violated because his confession to Jamaican authorities was admitted at trial is therefore without merit.

F. Ineffective Assistance of Counsel and Judicial Bias Claims

On February 19, 2002, Petitioner filed for a writ of error coram nobis with the Appellate Division, First Department, alleging ineffective assistance of appellate counsel. Petitioner argued that appellate counsel failed to argue that petitioner's trial attorney provided him with ineffective assistance of counsel. Petitioner asserted that his trial counsel had a conflict of interest due to his concurrent representation, in an unrelated matter, of a prosecution witness's co-defendant. Petitioner also claimed that his trial counsel intimidated a witness, failed to request the transcript of an in camera conference from which Petitioner and counsel for both sides were excluded, and failed to request a hearing to ascertain who was threatening witness Ripton Davis. Finally, Petitioner alleged that his appellate counsel also suffered from a conflict of interest, and failed to communicate sufficiently with him during preparation and filing of the appellate brief. See Weisel Aff. ¶ 19; Resp. Ex. 12, Pet'r's Coram Nobis Motion. In his habeas petition, Petitioner restates the claims made in his coram nobis motion, and adds that the trial court

was biased against him for failure to hold a proper hearing to determine whether there was a conflict of interest, and to investigate the source of threats to Ripton Davis.

1. Petitioner's Allegation That Trial Counsel Had a Conflict of Interest is Unexhausted

In order to exhaust a federal constitutional claim for the purposes of federal habeas review, the substance of the federal claim, both legal and factual, must be apparent from the petitioner's presentation to the state court. See Picard v. Connor, 404 U.S. 270, 275–76 (1971); Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981). In addition, the state courts, including the highest court so empowered, must have been presented with the opportunity to consider the petitioner's federal constitutional claim. See Picard v. Connor, 404 U.S. at 275–76.

Petitioner's coram nobis motion alleges that appellate counsel was ineffective for failing to raise and preserve an ineffective assistance of counsel claim in relation to trial counsel. Petitioner did not ask the Appellate Division to rule on the underlying ineffectiveness of trial counsel, as the coram nobis is not the appropriate vehicle for such claims. See Otero v. Stinson, 51 F. Supp. 2d 415, 419 (S.D.N.Y. 1999) (coram nobis addresses appellate errors, not trial errors; thus ineffective assistance of trial counsel claims are not properly raised there and are not exhausted by such a motion). See also Turner v. Artuz, 262 F.3d 118, 123 (2d Cir. 2001) (in coram nobis, petitioner could raise only ineffective assistance of appellate counsel; the predicate claims appellate attorney supposedly should have argued were not fairly presented to state court).

2. Appellate Counsel Did Not Provide Constitutionally Ineffective Assistance of Counsel

Petitioner argues that his trial counsel, Noah Lipman, Esq., did not provide him with effective representation, and that his appellate counsel, Ann Cypher, Esq., by not raising that issue, and an issue of judicial bias, also provided him with ineffective representation.

The only issue of potential importance regarding the adequacy of petitioner's representation is an alleged conflict of trial counsel about which petitioner claims he had not been informed. The alleged conflict arose because Mr. Lipman represented a person, Noei Walters, who was a

-19-

co-defendant of one of the prosecution's witnesses, Albert Kelley. That proceeding, and this one, were unrelated.

As trial counsel Lipman explained to the trial judge that he represented Noei Walters in a different proceeding. Walters was a co-defendant of Albert Kelley, a witness for the people against Petitioner and, according to the Assistant District Attorney, Kelley's ability to plead guilty was contingent upon Walters' entering a guilty plea. But this did not prevent Lipman from cross-examining Kelley, for although Kelley's status may have depended on Walters status, the converse was not true. Lipman, as the lawyer of petitioner and of walters, had no incentive to be soft on Kelley. In any event, the record shows that the issue of trial counsel's potential conflict was explained to Petitioner "from day one" by the court, and that the Petitioner answered the court "no problem." (Tr. 336-37). Lipman was able to represent Petitioner zealously and ethically and, by every indication, he did so. 22 NYCRR § 1200.24(C).

The obligation of Petitioner's appellate counsel to represent Petitioner zealously did not require counsel to advance a meritless argument. Petitioner has no ground to advance a claim of constitutionally inadequate representation. See Strickland v. Washington, 466 U.S. 668 (1984).

Lastly, petitioner argues that the trial court was biased. The argument is frivolous and does not require discussion.

Accordingly, the petition is dismissed. A certificate of appealability is denied. see 28 U.S.C. 2253(c). Petitioner has not made a substantial showing that his constitutional rights were denied.

SO ORDERED.

Dated:   New York, New York
         July /&, 2005

ALVIN K. HELLERSTEIN
United States District Judge